IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LYNDA JEFFRIES,

    Plaintiff,

v.                                             CIVIL ACTION NO.  2:16–cv–11798

C. R. BARD, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
(Defendant's Motion for Summary Judgment)

Pending before the court is the Motion for Partial Summary Judgment [ECF No. 26] filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has responded [ECF No. 30], and Bard has replied [ECF No. 32]. Thus, the Motion is ripe for adjudication. As set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

I.    **Background**

This action involves a Utah plaintiff who was implanted with the Align Urethral Support System, a mesh product manufactured by Bard, on July 25, 2012, in West Jordan, Utah. Short Form Compl. [ECF No. 1] ¶¶ 1–12. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least twenty cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 332 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 244, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Mar. 3, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 5 case.

## II.   Legal Standards

### A.  Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v.*

3

*Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Choice of Law

The parties agree that Utah choice-of-law principles apply to this case and that these principles compel the application of Utah substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12–cv–05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies

4

the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, the implantation surgery took place in Utah. Thus, Utah's choice-of-law principles guide the court's choice-of-law analysis.

Utah employs "the 'most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). In tort cases, Utah courts "determine which state has the most significant relationship to the occurrence and the parties" by analyzing the following factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 1060 (internal quotation marks omitted) (quoting Restatement (Second) Conflict of Laws § 145 (1971)).

Here, the plaintiff resides in Utah, received her mesh implant and follow-up treatment in Utah, and her alleged injuries occurred in Utah. Accordingly, I **FIND** that Utah has the most significant relationship to the occurrence and the parties, and I apply Utah's substantive law to this case.

### III.   Analysis

Bard argues it is entitled to summary judgment on the plaintiff's claims for negligence, strict liability manufacturing defect, and breach of express and implied warranties because they lack evidentiary support.

### A. Conceded Claims

The plaintiff concedes the following claims: Count III (Strict Liability – Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty). The plaintiff also concedes her negligence claim (Count I) to the extent that it alleges negligent manufacturing. Accordingly, Bard's Motion regarding these counts is **GRANTED**.

### B. Negligent Marketing, Labeling, Selling, Testing, and Inspecting

Bard contends that it is entitled to summary judgment on the plaintiff's negligence claim to the extent that it alleges negligent marketing, labeling, packaging, selling, testing, and inspecting because the plaintiff has not produced expert testimony that Bard breached its standard of care in these respects. The plaintiff responds that Bard misconstrues the nature of her claims, because Count I of the Complaint asserts a cause of action for general negligence, rather than distinct theories of recovery. The plaintiff also disputes Bard's contentions that these claims fail for lack of evidence, or that expert testimony is required to establish negligence.

A review of Count I of the Master Complaint reveals that the plaintiff asserts at least four distinct theories of negligence: negligent design; negligent manufacturing; negligent failure to warn; and negligent marketing, labeling, packaging, selling, testing, and inspecting. Master Compl. ¶¶ 64, 66. Thus, the plaintiff's concern that Bard misconstrues the plaintiff's negligence claim by dividing it into distinct subcategories of negligence is meritless. The Federal Rules of Civil Procedure expressly permit Bard to move for summary judgment on some of the

plaintiff's theories of negligence, without seeking dismissal as to the entire claim. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." (emphasis added)).

I have previously addressed similar arguments in *Kaiser v. C.R. Bard, Inc.*, No. 2:12-cv-3655, 2016 WL 6782743, at *3 (S. D. W. Va. Nov. 15, 2016) and *Alvarez v. C.R. Bard, Inc.*, No. 2:13-cv-26891, 2017 WL 1089188, at *3 (S.D. W. Va. Mar. 21, 2017). However, as this MDL has aged, the court has had additional opportunities to conduct further review of the evidence submitted by the plaintiff in support of her negligence claim. I now **FIND** that a genuine dispute of material fact exists with regard to the plaintiff's claims of negligent marketing, labeling, packaging, selling, testing, and inspecting. Accordingly, Bard's Motion on this point is **DENIED**.

### C. Failure to Warn

Bard also contends that it is entitled to summary judgment on the plaintiff's claims for failure to warn (in both negligence and strict liability), because the plaintiff is unable to establish that Bard's allegedly inadequate warnings proximately caused her alleged injuries.

To establish a claim for failure to warn, "a plaintiff must show that the failure to give an adequate warning in fact caused the injury; i.e., that had warnings been provided, the injured party would have altered his use of the product or taken added precautions to avoid the injury." *House v. Armour of Am., Inc.*, 929 P.2d 340, 346 (Utah 1996). "But, if the event which produced the injury would have occurred

7

regardless of the defendant's conduct, then the failure to provide a warning is not the proximate cause of the harm and the plaintiff's claim must fail." *Id.* (internal quotation marks omitted).

Utah courts recognize the learned intermediary doctrine, whereby "manufacturers of prescription drugs have a duty to warn only the physician prescribing the drug, not the end user or patient." *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 928 (Utah 2003). "A manufacturer will be held directly liable to the patient for breach of the duty to make timely and adequate warnings to the medical profession of any dangerous side effects produced by its drug of which it knows or has reason to know." *Id.* Both the Tenth Circuit and this court have previously determined that Utah courts would likely extend the learned intermediary doctrine to medical devices as well. *See Tingey v. Radionics*, 193 F. App'x 747, 757 n.4 (10th Cir. 2006); *Stewart v. Bos. Sci. Corp.*, No. 2:12-cv-03686, 2015 WL 5842762, at *6 (S.D. W. Va. Oct. 6, 2015); *cf. Schaerrer*, 79 P.3d at 929 (extending the learned intermediary doctrine to pharmacists).

Here, the plaintiff has presented no evidence from which a reasonable jury could infer that, had her implanting physician been given adequate warnings, it would have altered his decision to use the Align mesh on Ms. Jeffries. In fact, Ms. Jeffries's doctor testified during his deposition that, if he had been given additional information about the risks of using the Align mesh, he still would have recommended it to her. *See* Def.'s Mot. Partial Summ. J. Ex. E, at 80:8–13 [ECF No. 26-5] ("And still today, given the other options and the side effects and complications associated with

all of these, a suprapubic sling is still the best thing out there. And the Bard Align S is the one I do. And that's what I would have told her, and that's what I did tell her."). Thus, I **FIND** that no reasonable jury could infer that Bard's allegedly inadequate warnings proximately caused Ms. Jeffries's alleged injuries. Accordingly, Bard's Motion is **GRANTED** with respect to Count I (Negligence), to the extent that it alleges negligent failure to warn, and Count IV (Strict Liability – Failure to Warn).

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Partial Summary Judgment [ECF No. 26] is **GRANTED** with respect to Count I (Negligence), to the extent that it alleges negligent manufacturing and negligent failure to warn; Count III (Strict Liability – Manufacturing Defect); Count IV (Strict Liability – Failure to Warn); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty), and these claims are **DISMISSED with prejudice**. Bard's Motion is **DENIED** in all other respects.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 2, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9